UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEANNETTE FRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 13-551 (RJL) |
| | ) | |
| HOWARD UNIVERSITY et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION
(March 10, 2014) [Dkt. ##13, 14]

FILED
MAR 10 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Jeannette Frett, an African American woman, brings this discrimination suit against Howard University ("Howard" or "the University"); Howard's President, Dr. Sidney A. Ribeau; Howard's Board of Trustees ("the Board"); and the Chairman of the Board of Trustees' Audit and Legal Committee, the Honorable L. Douglas Wilder (collectively, "the Howard defendants");[1] as well as James "Jimmy" Jones, Howard's former Chief Human Resources Officer. *See* Compl. [Dkt. #1]. The non-University Howard defendants and Jones move to dismiss all claims against them, and Howard moves to dismiss one claim against it.[2] Upon consideration of the pleadings, relevant law, and the entire record therein, both motions are GRANTED.

---

[1] Although the Howard defendants join in a single motion to dismiss, they request different relief for the University than they do for Dr. Ribeau, the Board, and Chairman Wilder. For ease of reference, I refer to the latter three defendants as "the non-University Howard defendants."

[2] *See* Defs. Dr, Sidney A. Ribeau's, Bd. of Trs. of Howard Univ.'s, Hon. L. Douglas Wilder's, and Howard Univ.'s Mot. to Dismiss Pl.'s Compl. [Dkt. #13]; Def. James Jones's Mot. to Dismiss Pl.'s Compl. [Dkt. #14].

## BACKGROUND

Plaintiff's complaint alleges the following facts, which I accept as true and construe in her favor at this stage.[3] Howard University is a federally chartered private historically black university that receives approximately $235,000,000 each year from the federal government. Compl. ¶¶ 13, 15–17. At all relevant times, Howard's President and Chief Executive Officer was Dr. Sidney A. Ribeau. *Id.* ¶¶ 18–19. As President and CEO, Dr. Ribeau was responsible for the University's day-to-day decisions, practices, and procedures. *Id.* ¶ 20. University governance fell under the purview of the Board of Trustees, which had broad authority to exercise all powers conferred upon the University by its Charter. *Id.* ¶ 22. Former Virginia Governor L. Douglas Wilder was a member of the Board and the Chairman of the Audit and Legal Committee, which was responsible for advising the Board on the University's Code of Ethics and Conduct. *Id.* ¶¶ 24–26.

Frett is a 53-year-old dark-skinned African American woman. *Id.* ¶¶ 9, 78. In September 2010, Howard University hired her as a consultant, and the following January, she transitioned into a permanent position as Senior Director and Chief Talent Officer in the Office of Human Resources. *Id.* ¶ 9. From the time of her promotion through her termination, Frett reported directly to Howard's Chief Human Resources Officer and Executive Vice President James Jones. *Id.* ¶¶ 32, 55.

---

[3] I am also considering those documents that are "incorporated in the complaint," *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), and those "upon which the plaintiff's complaint necessarily relies," *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks omitted).

Throughout her tenure, Frett had a number of interactions with Jones that she claims created a hostile work environment and evidenced color or gender discrimination. For instance, Jones often used the phrase "HNIC" ("Head Nigger in Charge") to refer to himself and other high-ranking University employees, which Frett found to be "crude, shocking, and highly offensive" and interpreted as a sign that Jones would not tolerate anyone questioning his authority. *Id.* ¶¶ 61–68. Jones also told sexual jokes and "openly and casually discussed [his] perceived sexual prowess." *Id.* ¶¶ 70–71. He ignored Frett's concerns about another employee's disrespectful conduct, *id.* ¶¶ 73–76, and her strong recommendation that he replace an unqualified Director of the Employment Unit, a light-skinned African American woman, *id.* ¶¶ 95–100. In fact, Jones promoted the light-skinned woman and gave her a pay raise, only to later replace her on the advice of a white man, *id.* ¶¶ 100–105. Frett, meanwhile, was denied bonuses that Jones had promised her, supposedly because they had not been approved by the Board of Trustees, while males with lower performance ratings received unapproved bonuses. *Id.* ¶¶ 129–135, 159–162.

On multiple occasions, Jones publicly insulted or raised his voice at female employees, *see, e.g., id.* ¶¶ 106–107, 110–111, 116–119, 121–122, and said he likes to "wrestle" (*i.e.*, engage in "violently aggressive, public discussions") with them, *id.* ¶¶ 81–83. One day in June 2011, Jones both shouted at Frett and another female employee during a meeting and also "walked up behind them, towering over their heads, and provocatively asked them, 'Have you ever worked for a black man before?'" *Id.* ¶¶ 79,

118–120. Jones also undermined Frett and other women by making work-related decisions that adversely affected them—for instance, denying women the executive coaching opportunities that were provided to men, and changing budget policies to remove Frett's decisionmaking authority. *Id.* ¶¶ 123–124, 127. Frett ultimately came to believe that Jones "fe[lt] superior to other African American people, especially dark-skinned, African American females" and that he set up a "discriminatory hierarchy" with women like her at the bottom. *Id.* ¶¶ 78, 93.

On June 20, 2011, Frett submitted her first internal Equal Employment Opportunity ("EEO") complaint to Jones and Antwan Lofton, Howard's Director of the Office of Equal Employment Opportunity & Diversity. *Id.* ¶ 142. Jones responded by threatening Frett that if she did not retract her complaint, it would negatively impact her career at Howard. *Id.* ¶¶ 143, 145. Frett, Jones, and Lofton discussed the complaint in a June 28 meeting, and Frett was sufficiently satisfied with the proposed resolution that she withdrew her complaint. *Id.* ¶ 148. The situation did not improve, however, and Jones used intermediaries to continue threatening Frett. *Id.* ¶¶ 149–153. Jones also explored the possibility of restructuring Frett's areas of responsibility without her input, *id.* ¶¶ 156–158, and shared Frett's compensation information with her coworkers, *id.* ¶ 160. On November 14, 2011, Frett reinstated her EEO complaint. *Id.* ¶ 163.

During the next two weeks, Frett was out of the office on sick leave. *Id.* ¶ 164. On November 29, she returned to find that everything in her office had been moved

without warning into a dirty, unfurnished office outside of the Chief Human Resource Officer's suite. *Id.* ¶¶ 164–165. In the past, male employees were given notice of pending relocations, and their new offices were cleaned, painted, and furnished ahead of time. *Id.* ¶ 168. About a week later, on December 8, Frett went on sick leave again due to the emotional and physical stress caused by Jones. *Id.* ¶¶ 176–177. The next day, Jones announced that a male employee had assumed her responsibilities. *Id.* ¶ 181. Jones then urged Frett to take a position in a different department. *Id.* ¶ 186.

On December 14, 2011, Frett filed an official EEO complaint. *Id.* ¶ 187. Whereas male employees who had filed EEO complaints in the past were permitted to work in other departments pending investigation, Howard compelled Frett to take administrative leave while it reviewed her complaint. *Id.* ¶¶ 188–189. The subsequent investigation was conducted by an attorney who had a preexisting relationship with Howard, refused to allow Frett to have counsel at an interview, and ultimately concluded there was no discrimination without having ever met with Frett. *Id.* ¶¶ 193–206, 219.

While working for Howard, Frett investigated what she believed was a pattern and practice at Howard of violating federal I-9 immigration laws and ERISA requirements, as well as what she characterized as "abuse, fraud, waste, and mismanagement of University funds" resulting from a conflict of interest between Jones and a University contractor, PRM Consulting Group ("PRM"). *Id.* ¶¶ 207–208, 211. The conflict of interest allegedly stemmed from Jones's dual roles as a University officer and a senior manager at PRM,

which allowed him to award PRM no-bid contracts. *Id.* ¶¶ 38–44. On February 26, 2012, Frett filed a whistleblower complaint with Howard's Internal Auditor. *Id.* ¶¶ 210.

Frett filed a formal charge with the Equal Employment Opportunity Commission ("EEOC") on March 27, 2012. *Id.* ¶ 218.[4] The next day, she learned that Howard's internal investigation had uncovered insufficient support for her informal complaints. *Id.* ¶ 219. At Howard's behest, Frett returned to work on April 2, and she was terminated that same day, purportedly as part of a University "reduction in force" ("RIF"). *Id.* ¶¶ 138, 220–224. Although University terminations are usually merit-based, this RIF resulted in the firing of women with higher performance reviews than some men who remained employed. *Id.* ¶¶ 140, 231–233. Two of the women fired, including Frett, had recently filed EEOC charges against the University. *Id.* ¶¶ 138–139, 225–229.

After being terminated, Frett informed the Board of Trustees and Chairman Wilder about her earlier report of waste, fraud, and abuse and explained how the University had retaliated against her for her previous EEOC and whistleblower activities. *Id.* ¶¶ 238–241. The Board responded by initiating an investigation to be conducted by an auditor with a preexisting relationship with the University. *Id.* ¶¶ 244–247. As of the filing of her complaint, Frett had not been notified of the investigation's results. *Id.* ¶ 255.

Plaintiff filed a five-count complaint in this case on April 23, 2013. *Id.* In it, she alleges that the defendants engaged in color and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the District of

---

[4] She supplemented the charge on June 8, 2012. *Id.* ¶ 8.

Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11; denied her equal pay based on her gender in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1); and retaliated against her for filing an EEO complaint and EEOC charge in violation of Title VII, § 2000e *et seq.*, and the whistleblower provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). *See* Compl. ¶¶ 259–286. Although presented in separate briefs, the non-University Howard defendants and Jones move to dismiss on the same grounds—namely, that Title VII, the Equal Pay Act, and the FCA provide only for *employer* liability, and the DCHRA's one-year statute of limitations expired before plaintiff filed her complaint.[5] Howard also moves to dismiss the FCA count for failure to state a viable claim under that statute. Plaintiff opposes both motions.[6]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[5] *See* Defs. Dr. Sidney A. Ribeau's, Bd. of Trs. of Howard Univ.'s, Hon. L. Douglas Wilder's, & Howard Univ.'s Mem. of P. & A. in Supp. of Mot. to Dismiss Pl.'s Compl. ("Howard Defs.' Mem.") [Dkt. #13-1]; Def. James Jones's Mem. of Law in Supp. of His Mot. to Dismiss Pl.'s Compl. ("Jones's Mem.") [Dkt. #14].

[6] *See* Pl.'s Mem. & Opp'n to Defs. Dr. Sidney Ribeau, Bd. of Trs. of Howard Univ., Hon. L. Douglas Wilder, & Howard Univ.'s Mot. to Dismiss ("Pl.'s Howard Opp'n") [Dkt. #16]; Pl.'s Mem. & Opp'n to Def. James Jones's Mot. to Dismiss Pl.'s Compl. ("Pl.'s Jones Opp'n") [Dkt. #17].

7

alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted). But "the court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ANALYSIS

### A. Title VII (Counts I and IV)

In her opposition briefs "[p]laintiff agrees that the proper [d]efendant in a Title VII claim is the employer, that is Howard University and the Board of Trustees," Pl.'s Jones Opp'n at 1, not Jones, Ribeau, or Wilder, *see id.*; Pl.'s Howard Opp'n at 19 (citing *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir.), *cert. denied*, 516 U.S. 1011 (1995)). Plaintiff thus concedes dismissal of Counts I and IV against the three individual defendants.

The Board of Trustees, on the other hand, plaintiff argues can be held liable as her employer because it "should either be considered an identical party to Howard University or a principal/agent of Howard University." Pl.'s Howard Opp'n at 19. The Howard

defendants disagree, arguing that claims against the Board should be dismissed because it was not plaintiff's employer. *See* Howard Defs.' Mem. at 9–10. As one of my colleagues recently noted in a similar case, the Board's argument on this point "seems correct." *Johnson v. District of Columbia*, 947 F. Supp. 2d 123, 126 n.2 (D.D.C. 2013). Fortunately, I need not wade into plaintiff's strained lines of reasoning because her own complaint identifies only one "employer": Howard University.

In the very first paragraph of the complaint, Frett describes herself as "a former employee *of Howard University*" and alleges discrimination "during her employment *at Howard University*." Compl. ¶ 1 (emphases added). Just a few pages later, she reiterates that she "was employed continuously *at Howard University*." *Id.* ¶ 10 (emphasis added). She also alleges that defendant-Jones was employed pursuant to an "employment contract *with Howard University*," *id.* ¶ 45 (emphasis added), which was signed by Howard's president on behalf of *Howard University*, *see* Employment Agreement Between Howard University and James "Jimmy" R. Jones III at 9 (attached as Ex. 1 to Pl.'s Jones Opp'n) [Dkt. #17-1]. It is only logical to assume that plaintiff's employment agreement was likewise with Howard University, *not* the Board of Trustees.

Indeed, nowhere in her complaint does Frett allege that she worked for the Board of Trustees or that the Board had a principal/agent relationship with the University. Those claims first appear in her opposition brief. It is well established in our Circuit that a plaintiff cannot overcome a motion to dismiss by alleging new facts in her responsive

pleading. *See, e.g., Harris v. District of Columbia*, 696 F. Supp. 2d 123, 136, 137 n.11 (D.D.C. 2010). Plaintiff pled in her complaint that Howard University was her employer, so that is the defendant against which she can proceed under Title VII.[7]

## B.     DCHRA (Count II)

A DCHRA plaintiff has the choice of filing her complaint either with the D.C. Office of Human Rights (DCOHR) or with a court, but regardless of which one she chooses, she must file within one year of the alleged discrimination or discovery thereof. D.C. Code §§ 2-1403.04(a), 2-1403.16(a). Bringing claims to the DCOHR tolls the one-year statute of limitations for bringing those same claims to a court, § 2-1403.16(a), and "[w]hen a charge of discrimination is filed with the EEOC in the District of Columbia, a claim is automatically cross-filed with the [DCOHR] pursuant to a 'worksharing agreement' between the two agencies," *Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d

---

[7] Plaintiff would fare no better on the merits of her arguments. First, if the Board and University are identical parties, then claims against the Board are duplicative of and merge with those against the University. *Cf. Campbell v. District of Columbia*, --- F. Supp. 2d ----, 2013 WL 5306641, at *1 (D.D.C. Sept. 23, 2013) ("Because the claims against the individual officer of the D.C. government are duplicative of the claims against the District, the Court will merge those claims and dismiss the officer as a party."); *Johnson*, 947 F. Supp. 2d at 126 n.1 ("[B]ecause a lawsuit against the Mayor acting in his official capacity is the same as a lawsuit against the District, the Mayor's inclusion in this lawsuit is unnecessary because it is duplicative."). Second, even if the Board were an agent of the University, our Circuit Court has held that agents are not individually liable under Title VII, and discrimination claims against them in their official capacities merge with claims against employers. *See Gary*, 59 F.3d at 1399 (agreeing with Ninth Circuit that "agent" in 42 U.S.C. § 2000e(b) serves only to incorporate employers' respondeat superior liability, not agents' individual liability); *see also Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 276 (D.D.C. 2012). Furthermore, plaintiff's own factual assertions about the Board—namely, that it "is entrusted with the governance of Howard University," Compl. ¶ 22, and is part of "the University's management," *id.* ¶ 209 (quoting Howard's *Hotline and Whistleblower Policy and Procedure*)—contradict her position that the Board is the "principal" and the University its "agent."

71, 78 (D.D.C. 2009) (citing 29 C.F.R. § 1601.13(a)(4)(ii)(A), and *Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004)). Here, none of the defendants dispute that Frett's March 27 and June 8, 2012 EEOC charges tolled the statute of limitations for her claims against Howard. *See* Charge of Discrim. (attached as Ex. C to Pl.'s Howard Opp'n) ("EEOC Charge") [Dkt. #16-1]; Suppl. Charge of Discrim. (attached as Ex. A to Howard Defs.' Mem.) (Suppl. Charge") [Dkt. #13-3]. The question is whether, with respect to her claims against Jones and the non-University Howard defendants, the EEOC charges toll at least twenty-one days between plaintiff's April 2, 2012 termination and the filing of her complaint on April 23, 2013.[8] I find they do not.

A complaint filed under the DCHRA "*shall state the name and address* of the person alleged to have committed the violation, hereinafter called the respondent." D.C. Code § 2-1403.04(a) (emphasis added). In her charges, in the space provided below the prompt: "NAMED IS THE EMPLOYER . . . WHO DISCRIMINATED AGAINST ME (*If more than one list below.*)," plaintiff provided the name and address of only one respondent: Howard University. *See* EEOC Charge at 5; Suppl. Charge at 3.

Frett nevertheless contends that he was identified as a respondent because his name appears in the body of the charges and in a cover letter drafted by plaintiff's counsel. *See* Pl.'s Jones Opp'n at 22–23. But plaintiff does not address one crucial consideration: how Jones could have received notice of the charges or had the opportunity

---

[8] Plaintiff does not challenge Jones's argument that April 2, 2012 was "the last date on which she could have been subjected to any alleged discrimination," Jones's Mem. at 8, nor does she point to any discrimination discovered after that date.

11

to participate in the EEOC conciliation process if his name and contact information were not provided. She cites no authority for the notion that such indirect identification of a respondent puts him on notice of the charge or tolls the statute of limitations for claims against him.[9] In the absence of any suggestion that Jones actually received notice or participated in proceedings before the EEOC, I am compelled to dismiss the DCHRA claim against him as barred by the statute of limitations. *See, e.g., Brown v. Children's Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 137 (D.D.C. 2011) ("Plaintiff cannot now proceed as against the individual defendants on DCHRA claims that were neither brought within the one-year statute of limitations nor filed with the EEOC or the DCOHR."); *Anyaibe v. Gilbert Sec. Serv., Inc.*, Civ. No. 94-2377, 1995 WL 322452, at *4 (D.D.C. May 18, 1995) (dismissing claims against two defendants because "[a]lthough they are both mentioned in the plaintiff's [EEOC] affidavit, the plaintiff has presented no evidence (and the Court is aware of none) that would suggest that either [defendant] was aware of the contents of the affidavit" and because "there is no evidence that either of these defendants was aware of the EEOC conciliation process or could have participated in the process").[10]

---

[9] In fact, plaintiff herself cites an opinion from our Circuit Court that says "'it makes sense, in our view, to . . . read [EEOC charges] . . . *with weight to the construction given them by the Commission* in the matters it proceeds to investigate.'" Pl.'s Howard Opp'n at 23 (emphasis added) (quoting *Macklin v. Spector Freight Sys., Inc.*, 478 F.2d 979, 988 (D.C. Cir. 1973)). In this case, the EEOC considered Jones to be a "third party," not a respondent, to plaintiff's EEOC charge. *See* Letter from Mindy E. Weinstein, EEOC Washington Field Office Acting Director, to Amanda C. Dupree, Esq., Counsel for Defendant Jones, at Comment Page (Aug. 28, 2013) (attached as Ex. B to Mot. for Leave to Fill Suppl. Mem. & Attachs in Supp. of Mot. to Dismiss DCHRA Claims Against Def. James Jones) [Dkt. #21-2].

[10] It bears noting that the cover letter from Frett's attorney—as well as the fax cover sheet used to transmit the charge to the EEOC—bear the subject line "Re: Jeannette Frett's Claims *Against*

As to the non-University Howard defendants, plaintiff concedes that they were not named as respondents in the EEOC charges, *see* Pl.'s Howard Mem. at 23, but she asserts that they "had *actual* notice of the charges against them, whether or not they were directly named in Ms. Frett's administrative charge," because "each [d]efendant had, at the very least, an agency relationship with Howard University," *id.* at 24. Alternatively, she takes the position that "when Howard University received actual notice of Ms. Frett's EEOC charge, the [non-University Howard defendants], would have, at a minimum, received constructive notice as well." *Id.* at 25.

Plaintiff's complaint and briefs are devoid of any facts regarding when, where, or how the non-University Howard defendants received actual notice, which means that her entire argument turns the legal proposition that Howard's knowledge of the EEOC charge can be imputed to the other defendants. Unfortunately for plaintiff, that is not the law. *See U.S. v. $6,976,934.65, Plus Interest Deposited into Royal Bank of Scot. Int'l Account No. 2029-56141070, Held in the Name of Soulbury Ltd.*, 554 F.3d 123, 129 (D.C. Cir. 2009) ("'[N]otice of facts that a principal knows . . . is not imputed downward to an agent.'" (quoting RESTATEMENT (THIRD) OF AGENCY § 5.03 cmt. g (2006)). In the final analysis, the non-University Howard defendants, like Jones, did not participate in the EEOC conciliation process and may not have even known about it because they were not identified as respondents and their addresses were not included on the EEOC charge. The

---

*Howard University.*" EEOC Charge at 1, 2 (emphasis added).

DCHRA claims against them therefore must be dismissed.[11]

## C. Equal Pay Act (Count III)

Courts in this Circuit and elsewhere have recognized that the Equal Pay Act "overlaps" with Title VII, and the two statutes should be "construed harmoniously with the result that the principles developed under each . . . [be] applied interchangeably" with the other. *Hardy v. Bowen*, Civ. No. 85-2119, 1986 WL 15710, at *8 (D.D.C. Nov. 19, 1986) (citing *County of Washington v. Gunther*, 452 U.S. 161 (1981)), *aff'd sub nom., Hardy v. Sullivan*, 889 F.2d 291 (D.C. Cir. 1989); *see also Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001) ("The Equal Pay Act and Title VII must be construed in harmony, particularly where claims made under the two statutes arise out of the same discriminatory pay policies."); *Orahood v. Bd. of Trs. of Univ. of Ark.*, 645 F.2d 651, 654 (8th Cir. 1981) ("In examining a sex discrimination case involving unequal compensation, Title VII and the Equal Pay Act must be construed in harmony."). As under Title VII, then, only plaintiff's "employer" can be liable under the Equal Pay Act. *See Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 73 (D.D.C. 2012); *Zuurbier v. MedStar Health, Inc.*, 306 F. Supp. 2d 1, 6 (D.D.C. 2004). Accordingly, plaintiff's Equal Pay Act claim can proceed against only Howard University. *See supra* Part A.[12]

---

[11] It appears that plaintiff's failure to exhaust administrative remedies might also provide an additional ground for dismissing her Title VII and EPA claims against all defendants except the University. But "failure to exhaust is an affirmative defense, and the burden rests with the defendant[s]," *Hayes v. Chao*, 592 F. Supp. 2d 51, 55 (D.D.C. 2008) (citing *Bowen v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)), who in this case have not even raised the argument.

## D. False Claims Act (Count V)

Finally, as under Title VII and the Equal Pay Act, FCA liability is limited to "employers." *See Yesudian*, 270 F.3d at 972; *Saunders v. District of Columbia*, 789 F. Supp. 2d 48, 57 (D.D.C. 2011) (citing *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 322 F.3d 738, 740–41 (D.C. Cir. 2003)). Plaintiff is correct that our Circuit Court has not addressed this issue since the FCA was amended in 2009. *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624–25. Other courts have, however, and I find their reasoning to be persuasive and consistent with the logic of our Circuit's case law. *See, e.g., Lipka v. Advantage Health Grp., Inc.*, Civ. No. 13-2223, 2013 WL 5304013, at *10–12 (D. Kan. Sept. 20, 2013); *Aryai v. Forfeiture Support Assocs., LLC*, Civ. No. 10-8952, 2012 U.S. Dist. LEXIS 125227, at *19–27 (S.D.N.Y. Aug. 27, 2012) (citing *Yesudian*, 270 F.3d at 972, for the proposition that "even after the 2009 amendment[,] interpreting amended section 3730(h) to provide for individual liability is inconsistent with the [FCA's] mandatory remedy of reinstatement."). Once again, as Frett's former employer, Howard University is the only proper FCA defendant.

Frett's retaliation claim against the University must be dismissed as well because

---

[12] Assuming *arguendo* that the non-University Howard defendants could be found liable under the theory that they were "employer[s]" because they "act[ed] directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), Frett still has failed to state a plausible claim. The complaint contains no specific allegations about these defendants' role in setting or supervising wages. Accordingly, there is no basis to infer that they "act[ed] directly or indirectly" on Howard's behalf when it came to Frett's salary.

15

she has not alleged a plausible violation of the FCA's whistleblower provisions. To state such a claim, plaintiff would have to show that she (1) "engaged in protected activity, that is, acts done . . . in furtherance of an [FCA] action" and (2) "was discriminated against because of that activity." *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998) (internal quotation marks omitted). In her complaint in this case, plaintiff cites a "whistleblower complaint" that she submitted to Howard's internal auditor as reflecting her protected activity. *See* Compl. ¶ 210 (citing Complaint from Jeanette Frett, Chief Talent Officer and Sr. Director-Human Resources, to Dr. Carroll Little, Internal Auditor (Feb. 16, 2012) (attached as Ex. D to Pl.'s Howard Opp'n) ("Whistleblower Compl.") [Dkt. #16-1]). Read in the light most favorable to plaintiff, her allegations still do not meet the elements of an FCA retaliation claim.

To constitute a "protected activity," a plaintiff must be "investigating matters that reasonably could lead to a viable [FCA] case." *Yesudian*, 153 F.3d at 740 (internal quotation marks omitted). "Mere dissatisfaction with one's treatment on the job is not, of course, enough. Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations." *Id.* Plaintiff's notice to the University that "audit findings revealed a pattern of gross negligence and mismanagement . . . [of] federally mandated I9 administration and recordkeeping," as well as "fail[ures] to comply with federally mandated ERISA requirements," Whistleblower Compl. ¶¶ 1, 2, fits squarely within this last category of unprotected activities. Her complaint that Jones

16

"created an environment of intimidation and hostility" that left employees "afraid to speak out against mismanagement, inefficiencies and waste" also has no relation to any potential FCA claim and more closely resembles an expression of dissatisfaction with her treatment on the job. *Id.* ¶ 5.

Moreover, to establish causation, "[t]he employee must show that: (a) the employer had knowledge the employee was engaged in protected activity; and (b) the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity." *Yesudian*, 153 F.3d at 736 (internal quotation marks omitted). When an employee engages in reporting activities that could be "mistaken for routine actions in accordance with [her] employment obligations," *id.* at 745—for example, a contract administrator raising concerns about oversight of a government contract, *id.* at 744 (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 949–50 (5th Cir. 1994))—courts have ruled as a matter of law that the employer could not have known that the employee's actions might lead to FCA charges. *See, e.g., United States ex rel. Remseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996); *Robertson*, 32 F.3d at 952. Absent any notice that the employee is investigating FCA-type *fraud*—as opposed to other potential problems that fall within the employee's area of responsibility—"the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).

Frett, by her own account, "was hired in September 2010 to conduct an assessment

of the Employment/Recruitment Department in order to address critical deficiencies and mitigate potentially costly risks that existed in the Office of Human Resources and the Employment/Recruitment Department." Compl. ¶ 94. She alleged in her whistleblower complaint that Jones (1) had "contracted with PRM, Robinson Consulting Group (which has a relationship with PRM) and Lee Hecht Harrison for services that could have been provided by current Howard HR staff" and had "hired PRM staff and longtime friend Kirk Dixon of PRM to perform duties that could have been performed by current Howard HR staff," allegedly because Jones had a financial interest in those companies, and (2) "abused his authority and mismanaged funds by increasing the salaries of select employees without merit." Whistleblower Compl. ¶¶ 3, 4. Although Frett used the word "fraud" in her whistleblower complaint, her actual allegations did not describe any "false or fraudulent claims" or even hint that Jones, PRM, or anyone else had "submitted false records or demands for payment" that could lead to FCA liability. *Campbell v. District of Columbia*, --- F. Supp. 2d ----, 2013 WL 5306641, at *6 (D.D.C. Sept. 23, 2013) (dismissing retaliation claim under D.C. False Claims Act, which is "analyzed in a similar fashion to[] a retaliation claim arising under the federal [FCA].")."Although [plaintiff] may have suspected that the [HR department's contracts] were tainted by impropriety, disclosing wasteful procedures or practices . . . does not amount to an investigation of false or fraudulent claims." *Id.* (internal quotation marks omitted).

Furthermore, because it was plaintiff's job to address deficiencies and risks in

Howard's HR department, there is no way that the University could have known that plaintiff's report to the auditor constituted a step towards an FCA claim, rather than simply a report detailing inefficiencies that she had discovered in the performance of her job. Thus, even if her investigation and whistleblower complaint constitute "protected activities," it would be impossible to find that the University retaliated against her for those activities, as they were indistinguishable from her work in the HR department.

## CONCLUSION

Thus, for all of the foregoing reasons, the defendants' motions to dismiss are GRANTED. An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge